UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-23193-CIV-ALTONAGA/Reid

ADVANCED RX
MANAGEMENT, LLC,

    Plaintiff,
v.

KAREN PEREZ, *et al.*,

    Defendants.
_____/

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

**THIS CAUSE** came before the Court upon Plaintiff, Advanced RX Management, LLC's Motion for Temporary Restraining Order . . . [ECF No. 5], filed on July 30, 2025. The relief Plaintiff seeks is evident from the title of the Motion. The Court has carefully considered the Complaint [ECF No. 1], associated exhibits, and applicable law. For the following reason, the Motion is granted in part.

## I. INTRODUCTION

Plaintiff is a Florida limited liability company that provides pharmacy-management services to physicians and patients, with a focus on workers-compensation patients. (*See* Compl. ¶¶ 6–8). Defendant, Karen Perez is Plaintiff's former employee. (*See id.* ¶¶ 2, 9). Defendant, StreamCare, LLC ("StreamCare") is a Florida limited liability company that competes with Plaintiff in providing pharmacy-management services. (*See id.* ¶¶ 10, 75). Defendant, Cathleen H. Casacci is StreamCare's National Sales Manager. (*See id.* ¶ 53). The heart of this case is Plaintiff's allegation that Perez misappropriated Plaintiff's confidential and proprietary

information and, together with StreamCare and Casacci, used the information to divert Plaintiff's clients to StreamCare. (*See id.* ¶ 2; *see also* Mot. 3).[1]

In the Complaint, Plaintiff brings 12 claims for relief under, variously, the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* ("DTSA"), and Florida law. (*See* Compl. ¶¶ 99–273). To address what Plaintiff alleges is "the very real and imminent threat of the loss of additional longstanding goodwill and business[,]" Plaintiff seeks entry of a temporary restraining order. (Mot. 20 (alteration added)).

## II.  LEGAL STANDARDS

To obtain a temporary restraining order, a party must demonstrate

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest.

*Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citations omitted); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

*Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974) (footnote call number omitted).

### III.  DISCUSSION

The Court begins by considering the four factors for a temporary restraining order and then the two additional requirements imposed by Federal Rule of Civil Procedure 65(b)(1), finding that the requirements for a temporary restraining order are met.  The Court concludes by considering the scope of Plaintiff's requested relief.

**A.  Temporary Restraining Order Factors**

As explained, Plaintiff must show a substantial likelihood of success on the merits, irreparable injury, that the threatened injury to Plaintiff outweighs the harms to Defendants, and that the public interest would be served by a temporary restraining order. *Schiavo*, 403 F.3d at 1225–26.

**Substantial Likelihood of Success on the Merits.**  Plaintiff brings 12 claims under several theories and statutes.  (*See generally* Compl.).  Plaintiff has shown it has a strong probability of proving at trial the elements necessary for the following claims. [2]

---

[2] While Plaintiff asserts conversion and breach-of-duty-of-loyalty claims against Perez (*see* Compl. ¶¶ 234–48), and alleges all Defendants violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 (*see id.* ¶¶ 260–73), Plaintiff does not address these claims in its Motion (*see generally* Mot.). Nevertheless, Plaintiff's other claims support its request for relief. *See Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1384 (M.D. Fla.) ("To obtain temporary injunctive relief, [a plaintiff] must show a substantial likelihood of success on *at least one claim*." (alteration and emphasis added; footnote call number omitted)), *aff'd*, 403 F.3d 1223 (11th Cir. 2005).

CASE NO. 25-23193-CIV-ALTONAGA/Reid

***Counts I – IV.*** First, Plaintiff alleges all Defendants violated the DTSA and the Florida Uniform Trade Secret Act, Fla. Stat. § 688.001 *et seq.* ("FUTSA"). (*See* Compl. ¶¶ 99–174). Based on the record, there is good cause to believe:

1. Plaintiff's client lists, prospective client lists, contracts, business and formulary data, and other "Confidential Information" as defined in a non-disclosure agreement that Plaintiff states was executed by Perez (*see* Compl. ¶ 37; *id.*, Ex. A, Non-Disclosure Agreement ("NDA") [ECF No. 1-1] 2), constitute trade secrets under the DTSA and FUTSA. Plaintiff took reasonable steps to maintain the secrecy of this information, given that it had multiple policies aimed at protecting the information — including the NDA, two confidentiality notices, and a Conflict-of-Interest Policy in its Employee Handbook — and required employees, like Perez, to agree not to divulge the information and to return any proprietary materials upon separation.

2. It is likely that Defendants misappropriated Plaintiff's trade secrets without Plaintiff's consent and by improper means, given the evidence Plaintiff submits showing that (1) Perez had access to Plaintiff's trade secrets while employed with Plaintiff; (2) Perez, in coordination with Casacci and StreamCare, began soliciting Plaintiff's clients while employed by Plaintiff; (3) Perez refused to return Plaintiff's property and proprietary information upon resignation; and (4) StreamCare has gained the exact same clients Perez serviced while employed with Plaintiff.

***Counts V–VIII.*** Next, Plaintiff brings breach-of-contract claims against Perez. (*See* Compl. ¶¶ 175–233). There is good cause to believe:

1. Perez executed the NDA, which contains restrictive covenants governed by section 542.335, Florida Statutes.

2. The restrictive covenants in the NDA — which relate to Perez's retention, use, or disclosure of Plaintiff's confidential business information — are valid and enforceable. The

restrictive covenants aim to protect Plaintiff's legitimate business interests under Florida law and only apply to Plaintiff's confidential information. While the NDA states Perez is bound by the restrictive covenants "in perpetuity" following termination or resignation (NDA 1) — making the temporal scope presumptively unreasonable, *see* Fla. Stat. § 542.335(e) — the Court has discretion to limit the term of a restrictive covenant to a reasonable period, *see id.* § 542.335(c); and five years is presumptively reasonable, *see id.* § 542.335(e). Similarly, although the NDA is not limited in geographic scope and thus may be overbroad (*see generally* NDA), the Court has discretion to limit its scope to a reasonable area, *see* Fla. Stat. § 542.335(e), such as Miami-Dade County, Florida — the location where Perez allegedly breached the restrictive covenants.

3. Perez likely breached the NDA. The restrictive covenants prohibit Perez from divulging Plaintiff's confidential business information or using it for purposes other than her employment with Plaintiff. Based on the described conduct, a reasonable inference can be made that Perez used Plaintiff's confidential information to divert business to StreamCare.

*Count VI.* Additionally, Plaintiff alleges all Defendants tortiously interfered with Plaintiff's business relationships. (*See* Compl. ¶¶ 250–59). There is good cause to believe:

1. Plaintiff had existing business relationships with healthcare providers such as the Miami Institute of Joint Reconstruction and its physicians, Dr. Amar Rajadhyaksha and Dr. Mauricio Herrera; the Miami Center for Orthopedic Care; Orthopaedic Associates of South Broward; Dr. Michael Mijares; Dr. Kavita Sharma; and Dr. Tse Chung Lee.

2. Perez had knowledge of these business relationships because of her employment with Plaintiff as a Customer Sales Specialist who serviced these clients' accounts. StreamCare and Casacci learned of the business relationships from Perez or from a cease-and-desist letter Plaintiff sent.

3. Defendants likely intentionally interfered with Plaintiff's business relationships, and are continuing to do so, by frustrating Plaintiff's ability to service its clients and diverting the clients to StreamCare. Plaintiff's significant drop in business upon Perez's departure suggests Defendants interfered with Plaintiff's business relationships.

4. Because of Defendants' interference, Plaintiff likely suffered damages, including loss of goodwill and the loss of the value of the diverted business.

Based on the foregoing, the Court concludes Plaintiff has shown a substantial likelihood of success on the merits of these claims.

**_Irreparable Harm._** Plaintiff has also shown that, absent a temporary restraining order, it will suffer irreparable injury. *See Schiavo*, 403 F.3d at 1225–26. As Plaintiff explains, "Florida law presumes irreparable harm in cases involving violations of employment agreement provisions regarding trade secrets, customer lists, or direct solicitation of existing customers." (Mot. 17 (quoting *Anchor Title & Escrow, LLC v. Omega Nat'l Title Agency, LLC*, No. 23-cv-8043, 2023 WL 3564942, at *2 (N.D. Fla. Apr. 14, 2023))). Courts have routinely held that a defendant's use of proprietary information to solicit customers and clients to a direct competitor of the plaintiff risks irreparable loss of customers and business, goodwill, and market position and competitiveness. *See Anchor Title & Escrow, LLC*, 2023 WL 3564942, at *2 (collecting cases).

**_Weight of Plaintiff's Injury Over Defendants' Harm._** Plaintiff has also shown its threatened injury outweighs potential harm to Defendants. *See Schiavo*, 403 F.3d at 1225–26. As explained, Plaintiff is at risk of significant, irreparable harm stemming from continued loss of business and damage to goodwill. Defendants, meanwhile, would be subject only to temporary inconvenience arising from complying with the law. In such circumstances, threatened injury outweighs potential harm. *See, e.g.*, *JetSmarter Inc. v. Benson*, No. 17-62541-Civ, 2018 WL

2709864, at *8 (S.D. Fla. Apr. 6, 2018) (concluding that a defendant "would suffer little, if any harm, by being ordered to comply with [the FUTSA] and the [employment agreement] to which he is bound" (alterations added)); *All Leisure Holidays Ltd. v. Novello*, No. 12-62328-Civ, 2012 WL 5932364, at *6 (S.D. Fla. Nov. 27, 2012) (concluding that "[t]he temporary inconvenience that would result to [d]efendants by precluding their use of [trade secrets] during the short duration of the [temporary restraining order] is outweighed by the threatened irreparable injury" (alterations added)).

***Public Interest.*** Finally, Plaintiff has also shown the public interest weighs in favor of a temporary restraining order. *See Schiavo*, 403 F.3d at 1225–26. As Plaintiff notes, public policy favors the enforcement of reasonable restrictive covenants. (Mot. 19 (citing *Charles Schwab & Co. v. Aviles,* No. 07-21745-Civ, 2007 WL 9702744, at *9 (S.D. Fla. Aug. 23, 2007), *report and recommendation adopted*, No. 07-21745-cv, 2007 WL 9702745 (S.D. Fla. Nov. 28, 2007))). Similarly, "Florida law [] makes plain that protecting trade secrets does not disserve, but rather promotes the public interest." *JetSmarter Inc.*, 2018 WL 2709864, at *8 (alteration added; citations and footnote call number omitted)). Considering Plaintiff's claims and the evidence in the record, the public interest weighs in favor of granting Plaintiff's request for a temporary restraining order.

### B.  Rule 65 Requirements

Having concluded Plaintiff satisfies the four factors for a temporary restraining order, the Court turns to the two additional requirements laid out in Federal Rule of Civil Procedure 65(b)(1): that (1) the facts "clearly show [] immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition"; and (2) Plaintiff's counsel "certifies in writing

any efforts made to give notice and the reasons why it should not be required." *Id.* (alterations added). Here, both requirements are met.

As explained, Plaintiff has shown it is and will continue to be subject to irreparable injury. Additionally, Plaintiff's counsel has certified, in writing, that there were attempts to provide Defendants notice; but that "there is a real and palpable risk" of further violation and "further notice . . . may cause Defendants to attempt to delete electronic evidence of their misappropriation and/or improper solicitation." (Mot. 21 (alterations added)). With that, Plaintiff has satisfied the requirements of Rule 65.

C. **Scope of Relief**

While the Court concludes Plaintiff has shown that a temporary restraining order is appropriate, the Court disagrees with the scope of relief requested in Plaintiff's [Proposed] Order . . . [ECF No. 5-3]. In addition to seeking traditional injunctive relief, Plaintiff asks the Court to order Defendants "to return any property belonging to" Plaintiff. (*Id.* 5). This request strains the limits of what should be achieved by a temporary restraining order.

As explained, *ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc.*, 415 U.S. at 439 (footnote call number omitted). At this point, to order an exchange of property would do more than preserve the status quo. The Court thus declines to adopt this portion of Plaintiff's proposal.

D. **Bond**

Finally, Plaintiff asserts Perez "agreed to an injunction bond of no more than $1,000." (Mot. 19 (citation omitted)). Yet the requested temporary restraining order will issue against all Defendants: Perez, StreamCare, and Casacci. Because only Perez agreed to a bond capped at

$1,000, the Court exercises its discretion to impose a bond of $15,000.00. *See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) ("[T]he amount of security required by [Rule 65] is a matter within the discretion of the trial court[.]" (alterations added; quotation marks and citation omitted)).

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that:

1. Plaintiff, Advanced RX Management, LLC's Motion for Temporary Restraining Order . . . **[ECF No. 5]** is **GRANTED in part**.

    a. Defendants are enjoined from interfering in any manner with Plaintiff's business relationships or contracts.

    b. Defendants are enjoined from directly or indirectly soliciting Plaintiff's clients using its confidential business or proprietary information.

    c. Defendants are enjoined from directly or indirectly using or disclosing Plaintiff's confidential or proprietary business information or any of its trade secrets.

    d. By **August 6, 2025**, Plaintiff shall post a bond in the amount of **$15,000.00**, as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. *See* Fed. R. Civ. P. 65(c). In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

    e. In accordance with Federal Rule of Civil Procedure 65(b), this Temporary Restraining Order shall expire **fourteen (14) days** after entry upon the docket, unless extended for good cause shown. If Plaintiff files a separate motion for a preliminary

CASE NO. 25-23193-CIV-ALTONAGA/Reid

injunction, the Court will set a hearing after affording Defendants the opportunity to file a written response and Plaintiff a reply memorandum.

2. Plaintiff shall file proofs of service of the Summons, Complaint, Motion, and this Order upon Defendants on or by **August 6, 2025**.

**DONE AND ORDERED** in Miami, Florida, on this 1st day of August, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record